IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

REDONDO CONSTRUCTION CORPORATION

Debtor

CASE NO. 02-02887 (ESL)

CHAPTER 11

## OPINION AND ORDER

On April 8, 2019, this Court rendered an *Opinion and Order* in which after an extensive and thorough analysis it denied the *Debtor's Position as to Overpayment to Lord Under the 15% Footnote Provision of the Supplement to Plan of Reorganization at Docket No. 1017* (Docket No. 2627) and granted in part and denied in part, Lord's *Opposition to Debtor's Position as to Alleged Overpayment Under the 15% Footnote Provision* (Docket No. 2629). The Court ordered the parties to submit within thirty (30) days, their respective computations regarding how the interest component should be distributed. (Docket No. 2652). On May 8, 2019, Continental Lord, Inc. (hereinafter referred to as "CLI" or "Lord") filed a *Motion in Compliance with Court Order* by which Lord discloses that its interest computation results in the net amount of $1,367,762.07. (Docket No. 2662). On May 20, 2019, Redondo Construction Corp. (hereinafter referred to as "Debtor" or "Redondo") filed a *Motion in Compliance with Order at Docket No. 2652* as to its calculation of interest award which results in the amount of $5,065.94 as total interest owed to Lord (Docket No. 2667, Exhibit A). On May 31, 2019, Lord filed its *Opposition to Debtor's Motion in Compliance with Order* requesting that the same be denied because the Debtor's calculations are not based on the real facts nor content of this Court's previous decisions and orders. Lord also states that Debtor's calculations completely disregard this Court's August 31, 2009 Decision and Order by which the Court awarded to Lord $1,746,085.00 for its principal amount and the Debtor complied with such award on July 16, 2012 and paid Lord the net amount

-1-

of $1,395,381.00 after deducting legal and administrative expenses. Moreover, the Debtor's calculations also disregard the content of this Court's April 8, 2019 *Opinion and Order* in which the Court denied the *Debtor's Position as to Overpayment to Lord under the 15% Footnote Provision of the Supplement to the Plan of Reorganization at Docket No. 1017* at docket no. 2627 (Docket No. 2668).

For the reasons stated below, the Court grants Lord's *Motion in Compliance with Court Order* (Docket No. 2662) and denies Redondo's *Motion in Compliance with Order at Docket No. 2652* (Docket No. 2667).

## Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## Procedural Background

The travel of this case is not only extensive but convoluted. However, the Court notes that regarding this particular legal controversy the procedural background has been thoroughly included in this Court's April 8, 2019 *Opinion and Order* (Docket No. 2652). The Court will only focus on the issue regarding the calculation of Lord's interest as to its pass-through claim and the relevant procedural background pertaining to the same.

On April 8, 2019, the Court rendered an *Opinion and Order* by which it denied the *Debtor's Position as to Overpayment to Lord Under the 15% Footnote Provision of the Supplement to Plan of Reorganization at Docket No. 1017* (Docket No. 2627) and granted in part and denied in part, Lord's *Opposition to Debtor's Position as to Alleged Overpayment Under the 15% Footnote Provision* (Docket No. 2629). The Court ordered the parties to submit within thirty (30) days, their respective computations regarding how the interest component should be distributed, "[a]s per the agreement of August 15, 1994, as amended, with Continental Lord, Inc. ("CLI"), CLI is entitled to a 15% pass through from the recovery by Debtor, less proportioned

expenses," pursuant to the principles of contractual interpretation premised upon articles 1233-1241 of the PR Civil Code, 31 L.P.R.A. §§3141-3479. (Docket No. 2652).

On May 8, 2019, CLI filed a *Motion in Compliance with Court Order* by which it discloses that its interest computation results in the net amount of $1,367,762.07 and the same is based on the Court Decision and Order entered on August 31, 2009 in adversary proceeding no. 03-00194 (Mayagüez Project), where the Court granted most of Debtor's claims, awarding separately and specifically to Lord the principal amount of $1,746,085 plus interest on such specific amount from June 30, 1996 (Adv. Proc. 03-00194, Docket No. 129, pg. 41); the provisions of the August 15, 1994 Liquidating Agreement, as amended in March 2001, the undisputed facts of the parties that occurred for more than twelve (12) years and the applicable provisions of articles 1233-1241 of the Puerto Rico Civil Code (Docket No. 2662).

On May 20, 2019, Redondo filed a *Motion in Compliance with Order at Docket No. 2652* as to its calculation of interest award for Lord which it referenced Exhibit A. Exhibit A in turn references Exhibits 1, 2, 3 and 4. The first part of the calculation has to do with the principal amount paid to Lord which was in the amount of $1,395,381.00 and the Debtor contends that there is an alleged overpayment of the principal in the amount of $542,244.40. According to the Debtor the corresponding interest award for Lord's 15% distribution out of a base of $6,076,678.93 results in $911,501.84 of which 10% of legal expenses and administrative expenses from Arrieta memo were deducted in addition to the overpayment in the amount of $542,244.40 and an interest overpayment in the amount of $135,107.26 which according to Debtor results in the amount of $5,065.94 as total interest owed to Lord (Docket No. 2667, Exhibit A).

On May 31, 2019, CLI filed its *Opposition to Debtor's Motion in Compliance with Order* contending that: (i) the Debtor's calculations are neither based on the real facts nor the content of this Court's previous decisions and orders; (ii) the Debtor makes its calculations in complete disregard of this Court's August 31, 2019 *Opinion and Order* by which the Court specifically awarded to Lord the sum of $1,746,085.00. Although Debtor complied with such award on July

16, 2012 and paid Lord this amount less legal and administrative expenses; and (iii) the Debtor's calculation also disregarded the content of this Court's April 8, 2019 *Opinion and Order*, when it ignored the fact that, "the Court denied debtor's *Position as to Overpayment to Lord under the 15% Footnote Provision on Docket No. 2627*." (Docket No. 2668). On June 7, 2019, the Debtor filed a *Motion Requesting Leave to Respond and Response to Lord's Opposition* and the same was granted on June 12, 2019 (Docket Nos. 2670). On November 18, 2019, the court denied the Debtor's *Motion for Reconsideration and/or Determination of Additional Facts* of its April 8, 2019 *Opinion and Order* (Docket No. 2652) (Docket No. 2677).

Thereafter, on December 2, 2019, Redondo filed a *Notice of Appeal and Statement of Election to District Court* (Docket No. 2679). On December 16, 2019, Redondo filed the *Appellant's Designation of Items on Appeal and Statement of Issues* (Docket No 2687). On December 27, 2019, CLI filed a *Motion under Fed. R. Bankr. P. 8009(a)(2)* (Docket No. 2688). On September 30, 2020, the United States District Court for the District of Puerto Rico rendered its *Opinion and Order* affirming this court's April 8, 2019 *Opinion and Order* denying the Debtor's position as to overpayment and validating the fifteen percent provision in the Plan of Reorganization as supplemented, and the November 18, 2019 *Opinion and Order* denying Debtor's *Motion for Reconsideration*. This *Opinion and Order* was docketed on October 6, 2020 in the Bankruptcy Court's docket. (Docket Nos. 2695 & 2696). Also, on October 6, 2020, this Court docketed an *Order and Notice* scheduling a hearing for February 9, 2021 (Docket No. 2697). On October 30, 2021, the Court docketed an *Order and Notice* continuing the status conference for February 11, 2021 (Docket No. 2701).

On February 11, 2021, a status conference hearing was held in which counsel for the Debtor expanded on the case history and informed that the case on appeal 19-cv-02129 (GAG) is pending a decision on debtor's motion for reconsideration/rehearing. Counsel for Lord informed that computations ordered by the court in its order were submitted in May 2019 by Lord (dkt#s 2662 & 2668) and by Debtor (#2667). The Court ordered the parties to report to the court within sixty (60) days on the status of the appeal, case number 2019-cv-02129 (GAG) (Docket No.

2707). On April 9, 2021, Redondo filed its *Motion in Compliance with Order at Docket No. 2707* informing the court that the appeal is currently pending and there has been no resolution of the *Motion for Rehearing* filed by the Debtor on October 19, 2020 and the same was granted on April 15, 2021. The Court granted the Debtor sixty (60) days to inform the status of the appeal (Docket Nos. 2709 & 2710). On June 17, 2021, the Debtor filed a *Motion in Compliance with Order at Docket No. 2707* informing the court that the appeal is currently pending and there has been no resolution of the *Motion for Rehearing* filed by the Debtor on October 19, 2020 (Docket No. 2712). On July 7, 2021, the Debtor filed a *Motion in Compliance with Order at Docket No. 2707* informing the court that the District Court denied the *Motion for Rehearing* and that the Debtor is reviewing the District Court ruling and potential action to follow. (Docket No. 2713). On July 30, 2021, CLI filed a *Motion to Inform and Request Hearing* informing the court that the appeal that was pending at the District Court was already resolved. Submitted before this Court are the parties' memoranda as to the amount of the interest owed to Continental Lord by Debtor and requesting a hearing to dispose of the pending matters. (Docket No. 2714). On September 13, 2021, CLI filed a *Motion Requesting Hearing* (Docket No. 2715).

**Positions of the parties regarding interest computations**

***CLI***

CLI's position is that the gross interest computation on the principal amount of $1,746,085.00 results in the amount of $1,672,995.70 and the net interest computation after legal and administrative costs are deducted results amount results in the net amount of $1,367,762.07. The same is based on the Court Decision and Order entered on August 31, 2009 in adversary proceeding no. 03-00194 (Mayagüez Project), where the Court granted most of Debtor's claims, awarding separately and specifically to Lord the principal amount of $1,746,085 plus interest on such specific amount from June 30, 1996 (Adv. Proc. 03-00194, Docket No. 129, pg. 41); the provisions of the August 15, 1994 Liquidating Agreement, as amended in March 2001, the undisputed facts of the parties that occurred for more than twelve (12) years and the applicable

provisions of articles 1233-1241 of the Puerto Rico Civil Code (Docket No. 2662). The Litigation Trust Administrator, all four (4) members of the Board and the then Debtor's attorney, Mr. Charles Cuprill, had agreed for more than twelve (12) years that such principal amount and interest were awarded specifically to Lord based on the provision in the Liquidating Agreement, as amended in March 2001.

Lord contends that the interest computation in the amount of $1,367,762.07 is similar to the computation used by Debtor's former attorney, Mr. Charles Cuprill, and notified to all the parties in the April 22, 2016 Memorandum (Docket No. 2559, Exhibit 6), except for the correction of two (2) minor errors. The first error is that the distribution percentage allocated to Lord should have been 18.94% and not the 19.04% used. The 18.94% was the percentage used by Mr. Roberto Arrieta for all of the distributions[1]. Thus, the interest corresponding to Lord using the base of the total interest granted in the amount of $8,833,134.62 and the 18.94% results in the amount of $1,672,995.70 and not the $1,681,931.34 used by attorney Cuprill. The second mistake is that Lord's allocation of the total administrative costs using the 18.94% results in the amount of $137,934.06 and not the $176,939.18 that was allocated. The total amount of the administrative costs was in the amount of $728,268.54. After deducting 10% for the legal costs according to Lord's allocation of the interest component ($1,672,995.70 x .10) and also deducting Lord's allocation of the administrative costs based on the 18.94%, the net interest payment results in the amount of $1,367,762.07. (Docket No. 2662, pg. 2 & Exhibit 1 for a detailed computation). CLI's position is that on April 22, 2016 when Mr. Charles Cuprill notified all parties of Debtor's computations, Mr. Gorbea, Lord's representative was unaware of the discrepancies, and accepted the amount calculated by Cuprill as correct. Moreover, the Debtor's attorney, the Litigation Trust Administrator and the two (2) shareholders of the Debtor which were actively participating in the case recognized the incorporation of the Liquidating Agreement, as amended, in the confirmed

---

[1] The 18.94% was obtained by dividing the amount awarded to Lord for the principal claim by the total principal amount awarded; namely:  $1,746,085/$9,220,888.88 = 18.94%. The April 22, 2016 memo used the principal amount awarded to Lord plus the interest ($9,565) which resulted in the amount of $1,755,650 and that is why the percentage obtained was 19.04% (Docket No. 2627, pg. 96).

Plan and they accepted and approved the July 16, 2012 payment to Lord (Docket No. 2559-4, Exhibit 4). The administrator provided to CLI two (2) different scenarios of pending payments of interest at a 6% interest rate for the pass-through claims. The only variable that that was different under the two scenarios for the interest calculation was the number of days from substantial completion date to payment date. Under the first scenario, the number of days were computed as 6,818 resulting in a net interest award (after deducting 10% for legal fees and 10.52% for administrative expenses) in the amount of $1,563,907.93 and the second scenario using 5,782 days results in a net interest award in the amount of $1,326,271.00 (Docket No. 2559-5).

Lord further argues that during the June 14, 2017 hearing this Court stated that the footnote in Exhibit B of the Plan's Schedule incorporated in the Plan the entire Liquidating Agreement of August 15, 1994, which includes the March 2001 amendments (Docket No. 2627, pgs. 25-27). Paragraphs 1 and 2 of the 2001 amendments state:

> "1. In the event that the Authority and/or Panel of Arbitrators agree to adjudicate the claims of each party separately, any amounts collected from the Authority will be distributed to the party whose claim has been adjudicated specifically. If only one party is adjudicated any money, then only said party will have any right to collect said amount.
>
> 2. In the event that the Authority and/or Panel of Arbitrators adjudicate all claims as a whole, then, Redondo and Continental Lord shall share in said sum according to the following percentages:
>
>     (a) Redondo will collect 85% of any sums adjudged.
>     (b) Continental Lord will collect 15% of any sums adjudged."

CLI contends that the Debtor's Supplement to the confirmed Plan on February 2005, including the footnote in Exhibit B to the Supplement should not be interpreted strictly as an amendment to the Liquidating Agreement because only a portion (paragraph (b) of section 2) of the 2001 amendment was erroneously included in the footnote when the document was incorporated by reference. There was no amendment to the Liquidating Agreement in 2005 because Mr. Gorbea's letter was sent with the sole purpose and intention to clarify and correct Lord's proof of claim which erroneously included Lord's claim for the PR-22 Mayaguez project claim. Moreover, Mr. Gorbea's letter does not state that he is amending the Liquidating

Agreement and its 2001 amendment. Mr. Gorbea's reference to a 15% was an unintended oversight since the Amendment to the Agreement of 2001 evinces that said percentage is a small part of said agreement, applicable only when the Court award is not separate. Moreover, none of the Debtor's attorneys' documents and motions for twelve (12) years (2005 to 2017) state that the Liquidating Agreement was amended in 2005 as a result of Mr. Gorbea's letter. The acts of all the parties after the 2005 footnote show their intention as to the adoption by reference of the Liquidating Agreement, as amended in March 2001.

This court in its April 8, 2019 *Opinion and Order* determined the following:

"Subsequently, all members of the Litigation Trust Board approved the distribution which was based on the amount of each of the subcontractor claims, not a 15% recovery from the total monetary amount of the claim for the PR-2 Mayaguez Project. The Litigation Trust Administrator's legal memorandum and the spreadsheet disclosed the different components of the distribution which disclosed that the principal of the subcontractor claims was being paid in full (exclusive of the 10% profit factor), not as a 15% percentage of the total principal amount recovered for the PR-2 Mayaguez Project. The principal awarded to Lord and Remodelco consisted in the entirety of their claims which was itemized by this court (and had also been itemized by Redondo as the Plaintiff in its post-trial memorandum at Adv. Proc. 03-00194, Docket No. 115, pgs. 20-21) in its August 31, 2009 Decision and Order. Lord and Remodelco's claims were not calculated as a 15% of the entire amount of Redondo's total claim for the PR-2 Mayaguez Project. There was no disclosure in the adversary proceeding that the claim of Lord would be paid pursuant to a Liquidating Agreement not the actual amount claimed to the PRHTA. (Docket No. 2652, pg. 53).

CLI contends that the correct interpretation of the 2005 footnote is that the same neither substitutes the Liquidating Agreement, as amended in 2001, nor is an amendment to the Liquidating Agreement, since the sole purpose of the footnote was to incorporate by reference the entire agreement, as amended in 2001, and to give notice of the existence of the pass-through agreement between Lord and Debtor as to the Mayaguez Project. Juan Felix Trinidad v. Yamil Chade, 153 D.P.R. 280 (2001). The rule is that the document must be interpreted in an integral manner, not considering only a few words or section. Blanca Guadalupe Solis v. Osvaldo González Dunez, 172 D.P.R. 676 (2007). (Docket No. 2662, pg. 18).

Moreover, this court in its April 8, 2019 *Opinion and Order* determined as follows:

"The judicial estoppel doctrine applies to Redondo because its new position regarding the subcontractor claims is inconsistent with its prior position as evinced in the extensive and convoluted travel of this adversary proceeding. Moreover, Redondo would derive an

unfair monetary advantage if this new position is accepted by the court, thirteen (13) years after filing the complaint in the adversary proceeding and four (4) years after the disbursement of the principal payment of the subcontractor claims from the date of the motion to reopen on June 28, 2016 (Docket No. 2559)" (Docket No. 2654, pg. 51).

Thus, CLI contends that the judicial estoppel doctrine application to Debtor should also be extended to the computation of the interest payable.

CLI in its *Opposition to Debtor's Motion in Compliance with Order* argues that: (i) the Debtor's calculations are neither based on the real facts nor the content of this Court's previous decisions and orders; (ii) the Debtor makes its calculations in complete disregard of this Court's August 31, 2009 *Opinion and Order* by which the Court specifically awarded to Lord the sum of $1,746,085.00. Although Debtor complied with such award on July 16, 2012 and paid Lord this amount less legal and administrative expenses; (iii) in the first square of Debtor's Exhibit A Debtor made several adjustments to the total amount of $10,402,099.66 awarded by the Court in order to reduce amount, with the intent of reducing the principal amount of $1,746,085 that was expressly awarded to Lord by the Court. As a result, the calculations that follow in the second and third squares of Debtor's Exhibit A are also baseless and erroneous. In addition, the use of the 15% is incorrect, as explained by Lord in its motion at docket number 2662. The Debtor is changing this Court's Judgment that has been firm and final for years and (iv) the Debtor's calculation also disregards the content of this Court's April 8, 2019 *Opinion and Order*, when it ignored the fact that, "the Court denied Debtor's *Position as to Overpayment to Lord under the 15% Footnote Provision on Docket No. 2627*." (Docket No. 2668).

**Debtor**

Redondo in its *Motion in Compliance* references Exhibit A as to its position for the calculation of Lord's interest award. Exhibit A in turn references Exhibits 1, 2, 3 and 4. The first part of the calculation has to do with the principal amount paid to Lord which was in the amount of $1,395,381.00 and the Debtor contends that there is an alleged overpayment of the principal in the amount of $542,244.40. The Debtor argues that the principal amount of Lord had to be

computed from the net base amount of $7,156,034.92 and multiply this figure by 15% resulting in Lord's principal claim in the amount of $1,073,405.24.

According to the Debtor the corresponding interest award for Lord's 15% distribution should be computed using a base of $6,076,678.93 instead of the total interest granted for the Mayaguez Project in the amount of $8,833,134.62. The Debtor argues that the interest base amount of $6,076,678.93 should be used to obtain Lord's interest allocation and the same should be multiplied by 15% resulting in an interest allocation of $911,501.84 of which 10% of legal expenses ($91,150.18) and the administrative expenses in the amount of $137,934.06 from Mr. Arrieta's memo were deducted in addition to the overpayment in the amount of $542,244.40 and an interest overpayment in the amount of $135,107.26 which according to Debtor results in the amount of $5,065.94 as total interest owed to Lord (Docket No. 2667, Exhibit A).

### ***Discussion***

The Court in its April 8, 2019 *Opinion and Order* held that there had been no overpayment in the amount of the principal claim that had been awarded and paid to CLI, net of legal and administrative costs in the amount of $1,395,381.00, based on the amended Liquidating Agreement, the Bankruptcy Court's 2009 Opinion and Orders and Judgment. Throughout this adversary proceeding the parties have agreed that the percentage of Lord's claim for the principal amount of the claim was calculated using the total principal base in the amount of $9,220,288.83 that was recalculated and allocated to the PR-2 Mayaguez Project pursuant to the mandate of the First Circuit Court of Appeals. (Adv. Proc. 03-00194, Docket Nos. 359 & 365). Moreover, on April 4, 2016, Redondo filed an *Urgent Motion for Calculation of Interest Due Redondo Construction Corporation and for Setting Aside Status Conference* in which Redondo states that the total principal amount awarded for the PR-2 Mayaguez Project was in the amount of $9,220,288.88 after excluding the extended home office overhead amounts. (Adv. Proc. 03-00194, Docket No. 359, pg. 2). In addition, in that same motion, Redondo calculates the interest amount pertaining to the PR-2 Mayaguez project in the amount of $8,885,209.49 in conformity with the mandate of the First Circuit Court of Appeals. Redondo disclosed that the total amount

of interest for the three (3) projects was in the total amount of $9,982,695.52 (Adv. Proc. 03-00194, Docket No. 359, pgs. 5, & 31, Exhibit VII). However, the total interest amount was later reduced by $59,128.09 for a total interest amount of $9,923,567.43 plus the interest accrued over said amount. The calculation of interest was reduced due to an *Opposition to "Urgent Motion ..." at Docket No. 359* filed by the Puerto Rico Highway and Transportation Authority to which Redondo conceded to said calculation of interest (Adv. Proc. 03-00194, Docket Nos. 362, 363, 365 & 366). The interest that had accrued for the PR-2 Mayaguez Project up to the Judgment date of August 31, 2009 was in the amount of $8,759,021.78 plus the post-judgment interest that had accrued in the amount of $74,112.84 for a total interest amount of $8,833,134.62 that was allocated to the PR-2 Mayaguez project as to which Redondo agreed with (Adv. Proc. 03-00194, Docket No. 362). Therefore, the Debtor's interest calculations of CLI based on allegations of an overpayment of Lord's principal claim are unfounded. Consequently, the Debtor's CLI interest calculation using the base amount of $6,076,678,93 is misplaced, given that the parties agreed that the total interest amount that was allocated to the PR-2 Mayaguez Project was in the amount of $8,833,134.62, not in the amount of $6,076,678.93. However, both parties agree that the amount that should be deducted for administrative expenses is in the amount of $137,934.06 based on Mr. Arrieta's memo. The total administrative expenses were in the amount of $728,268.54 and both parties agree that Lord's allocation should be 18.94% of the total administrative expenses ($137,934.06/$728,268.54).

As to the applicable contractual provisions, the court agrees with CLI that the August 15, 1994 Liquidating Agreement was amended by the March 2001 amendment which provided that in the event that the claim was adjudicated separately, any amounts collected from the authority would be distributed to the party whose claim had been adjudicated specifically (Docket No. 2627, pgs. 25-27, and 2559-2, pgs. 1-3). Moreover, the United States District Court for the District of Puerto Rico agreed with Appellee CLI that the Bankruptcy Court during the June 14, 2017 hearing stated that the footnote in Exhibit B of the Supplement to the Plan's Schedule incorporates by reference in the Plan the entire Liquidating Agreement of August 15, 1994, as amended in

2001 and is binding on Appellant (Docket No. 2696, pg. 5).  The court agrees that Lord's claim was allocated separately as a subcontractor claim and was allocated the amount of $1,746,085.00 pursuant to the Court's August 31, 2009 Decision and Order (Docket No. 2667, Exhibit 1 pgs. 41 & 42). Moreover, as thoroughly discussed in this Court's April 8, 2019 *Opinion and Order*, the Court explained the following:

> "This court has already discussed and concluded that Lord and Remodelco have pass through claims. The court also finds that the prejudgment and post judgment interest calculated from the total principal awarded in the three (3) projects, which included the PR-2 Mayaguez project, constitutes part of the award or recovery to which Lord and Remodelco are entitled to from the principal amounts of its pass through claims, which formed part of the total principal amount for the PR-2 Mayaguez project, and from which the prejudgment and post judgment interest were calculated.

> The court notes that unlike the August 31, 2009 *Decision and Order* which included and itemized Lord and Remodelco's pass through claims as a component of the total principal awarded under the PR-2 Mayaguez Project claim, the subsequent Opinion and Orders that have dealt with the issue of prejudgment and post judgment interest have calculated the interest using the total principal awarded by project. Thus, there is no specific allocation or itemization to the prejudgment and postjudgment interest pertaining to the subcontractor claims (Lord and Remodelco's pass through claims) which form part of the total principal awarded of the PR-2 Mayaguez project." (Docket No. 2652, pg.67).

> The court as part of its analysis also stated the following:

> "After considering the above findings, the court concludes that Lord and Remodelco are both entitled to their respective interest awards. However, the parties have not placed the court in a position to be able to determine the specific amount the interest award component should be. In the case of Lord, the Debtor has changed position regarding both the principal amounts of the pass-through claim and the interest component that corresponds to Lord for its subcontractor claim. The footnote 1 that was included as part of the estate's claims and causes of action, in particular to the claim regarding the PR-2 Mayaguez, and which reads, "[a]s per an agreement of August 15, 1994, as amended, with Continental Lord, Inc. ("CLI"), CLI is entitled to a 15% pass through from the recovery by Debtor, less proportioned expenses," references the Liquidating Agreement of August 15 1994, as amended." (Docket No. 2653, pg. 69).

> The court agrees with CLI that for more than twelve (12) years the Debtor pursued Lord's pass through claim, paid on July 16, 2012, the principal amount awarded of such claim under the Plan following the provisions of the Liquidating Agreement, as amended in March 2001, regarding payment of the claim based on the specific allocation of the same which was in conformity with the first paragraph of the 2001 amendment. (Docket No. 2652, pg. 10).  The court

also adopts CLI's legal analysis regarding Lord's net interest allocation and agrees with CLI that the percentage that was allocated to Lord was 18.94% and that the interest allocated to Lord should be 18.94% of the total amount of $8,833,134.62 which results in $1,672,995.70 minus 10% legal fees ($167,299.57) and $137,934.06 in administrative expenses resulting in the net interest amount due to CLI of $1,367,762.07. The court notes that the Debtor in its *Motion in Compliance with Order at Docket No. 2652* failed to provide any legal basis for CLI's interest computation (Docket No. 2667). Therefore, CLI's legal analysis for its interest component stands unopposed.

Conclusion

For the reasons stated above, the Court grants Lord's *Motion in Compliance with Court Order* (Docket No. 2662) and denies Redondo's *Motion in Compliance with Order at Docket No. 2652* (Docket No. 2667).

SO ORDERED.

In San Juan, Puerto Rico, this 27th day of January, 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge

-13-